IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANGE CREEK HOLDINGS, LLC, | ) | |
| et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | CIVIL ACTION NO. 08-0695-CG-B |
| v. | ) | |
| | ) | |
| CYPRESS CAPITAL II, LLC, <u>et</u> <u>al</u>., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This case was originally filed in the Circuit Court of Baldwin County. The defendants removed it to this court on December 3, 2008. It comes before the court on the defendants' motion to dismiss or transfer venue. The court heard oral argument on December 30, 2008.

## I.    FACTS AND ALLEGATIONS

Five named plaintiffs brought this case against six named defendants and several fictitiously-named defendants. The Second Amended Complaint ("complaint") is the most recent complaint on file in this case. (Doc. 1-2, pp. 49-66).

### A.    Parties and Their States of Citizenship

The plaintiffs are Range Creek Holdings, LLC ("Range Creek"), Water Canyon Holdings, LLC ("Water Canyon"), Utah Reverse Exchange, LLC ("Utah Reverse"), Patmos Energy, LLC ("Patmos"), and Charles K. Breland, Jr. ("Breland"). (Doc. 1-2, pp. 49-50).

Range Creek, Water Canyon, Patmos, and Breland are citizens of the State of Florida. (Doc. 1, pp. 5-7, ¶¶ 18, 19, 21, and 22). Utah Reverse is either a citizen of the State of Alabama or of the State of Florida, or both. (Doc. 1, pp. 6-7, ¶ 21 & n.2).

1

The named defendants are Cypress Capital II, LLC ("Cypress"), Olympus Capital Alliance, LLC ("Olympus"), Eric B. Hale ("Hale"), Robert Baxter ("Baxter"), Blair Walker ("Walker"), and Brad Christensen ("Christensen").  (Doc. 1-2, p. 50).

All of the defendants are citizens of the State of Utah.  (Doc. 1, pp. 7-8, ¶¶ 25-30).

**B.    Factual Allegations**

The plaintiffs bring eight counts based on the following allegations.  (Doc. 1-2, pp. 61-65).

The complaint alleges that defendant, Christensen, acting as an agent for defendant, Olympus, negotiated a $500,000 proposed loan to the plaintiffs.  (Doc. 1-2, p. 51, ¶ 15).  Acting on behalf of defendant, Olympus, defendant, Christensen, delivered to plaintiff, Breland, a loan term sheet on August 1, 2008, with respect to the proposed loan.  (Doc. 1-2, p. 51, ¶ 17).  The loan term sheet indicated that real property that plaintiffs, Range Creek, Water Canyon, and Utah Reverse, owned in Utah would secure the loan.  (Doc. 1-2, pp. 51-52, ¶ 17).

The loan term sheet that defendant, Christensen, delivered to plaintiff, Breland, provided for the following: a (1) $500,000 loan, (2) at 24% per annum interest, (3) a loan origination fee payable at the maturity of the proposed loan in the amount of 200% of the amount of the proposed loan, (4) the loan origination fee would reduce to 100% of the amount of the proposed loan if the loan was satisfied within 90 days, or by 3:00 p.m. on November 1, 2008.  (Doc. 1-2, p. 52, ¶ 19; Doc. 1-2, p. 53, ¶ 23).  As explained in a subsequent writing, (5) the loan origination fee was based only on the amount actually advanced and (6) would not bear interest.  (Doc. 1-2, pp. 52-53, ¶ 20).  The loan term sheet indicated that the loan would be made to Breland or to Water Canyon.  (Doc. 1-2, p. 54, ¶ 27).

When it delivered the loan term sheet, defendant, Olympus, knew that plaintiff, Patmos,

needed $250,000 of the loan proceeds before 5:00 p.m. on August 1, 2008, in order to continue

an oil, gas, and mineral lease from the State of Utah.  (Doc. 1-2, p. 53, ¶ 21).  Olympus told

Patmos that it could fund the proposed loan by that time.  (Doc. 1-2, p. 53, ¶ 22).  The plaintiffs

allege that defendant, Olympus, had the following intentions when it delivered the loan term

sheet.  (Doc. 1-2, p. 53, ¶ 23).  First, defendant, Olympus, did not intend to make the proposed

loan, but rather intended for defendant, Cypress, to make it and also that defendant, Olympus,

did not intend to advance the full $500,000 referenced in the loan term sheet.  (Doc. 1-2, p. 53, ¶

23).  Second, and in the alternative, defendant, Olympus, did intend to advance the $500,000

itself but that defendant, Olympus, no longer intended to do so when it caused defendant,

Cypress, to make the proposed loan to plaintiff, Patmos.  (Doc. 1-2, p. 53, ¶ 23).

Defendant, Olympus, caused or allowed defendant, Cypress, to make a loan to Patmos,

rather than to Breland or to Water Canyon.  (Doc. 1-2, p. 54).  Defendant, Cypress, knew the

terms of the loan term sheet.  (Doc. 1-2, p. 54, ¶ 25).  Knowing about plaintiff, Patmos', deadline

of 5:00 p.m. on August 1, 2008, to fund its lease with $250,000, and allegedly with ill motives,

defendants, Olympus and Cypress, did not deliver the loan documents until 4:45 p.m. on August

1, 2008.  (Doc. 1-2, p. 54, ¶ 28).  Consequently, no plaintiff had an opportunity to review the

loan documents in time to obtain the $250,000 by 5:00 that afternoon.  (Doc. 1-2, p. 55, ¶ 29).

The terms of the loan documents were not consistent with the terms of the loan term sheet,

something that neither defendant, Olympus, nor defendant, Cypress, disclosed to any plaintiff.

(Doc. 1-2, p. 55, ¶ 31).

The loan, as made, was different from the loan as proposed in the loan term sheet.  It

provided for a (1) $250,000 loan, (2) with a $1,000,000 loan origination fee, (3) with 24%

interest per annum on the loan amount and the loan origination fee, (4) which amount of interest

would increase to 36% after maturity, whether maturity occurred at the end of the stated term or through acceleration.  (Doc. 1-2, p. 56, ¶ 34).

The loan documents included Deeds of Trust executed by plaintiffs, Range Creek, Water Canyon, and Utah Reverse, covering land owned by each of them in Carbon County, Utah. (Doc. 1-2, p. 57, ¶ 36).  Defendants, Olympus and Cypress, caused the Deeds of Trust to be recorded in the real property records in Carbon County, Utah.  (Doc. 1-2, p. 57, ¶ 37).

On September 4, 2008, defendant, Cypress, told plaintiff, Patmos, that Cypress considered the loan to be in default.  (Doc. 1-2, p. 57, ¶ 38).  The plaintiffs disputed and attempted to remedy the default and, discovering that the loan documents only provided for a $250,000 loan rather than a $500,000 loan, asked for the remaining $250,000 for which the loan term sheet provided.  (Doc. 1-2, p. 57, ¶¶ 38-39).  Defendant, Cypress, responded to the plaintiffs' request with a demand for the plaintiffs to agree to additional terms that were not included in the loan documents or in the loan term sheet.  (Doc. 1-2, p. 57, ¶ 40).  The plaintiffs did not agree to the additional terms, after which defendant, Cypress, caused a Notice of Default to be executed with respect to the Deeds of Trust on September 12, 2008 and caused the Notice of Default to be recorded in the real property records for Carbon County, Utah.  (Doc. 1-2, p. 58, ¶ 43).

Attempting "to take advantage of a discount on the loan commitment fee," plaintiff, Patmos, arranged for a replacement loan to satisfy the loan from defendant, Cypress, on or before October 31, 2008.  (Doc. 1-2, p. 58, ¶ 45).  The plaintiffs satisfied all of the requirements to obtain the replacement loan by October 30, 2008, except for two that the plaintiffs were prepared to satisfy by October 31, 2008.  (Doc. 1-2, pp. 58-59, ¶ 45).  Attempting to avoid giving plaintiff, Patmos, the benefit of the discount on the loan commitment fee set out in the loan

documents, defendant, Cypress, falsely claimed to parties other than Patmos that Patmos was in default on its loan with Cypress.  (Doc. 1-2, p. 59, ¶¶ 46-47).

On October 29, 2008, plaintiff, Patmos, offered to pay defendant, Cypress, an amount in excess of the amount due on Cypress' loan to Patmos, by October 31, 2008, in exchange for cancellation of the evidence of the indebtedness and of the security interests on the debt.  (Doc. 1-2, p. 60, ¶ 50).  Defendant, Cypress, refused.  (Doc. 1-2, p. 60, ¶ 51).  Defendant, Cypress', actions prevented the plaintiffs from consummating the replacement loan and, consequently, from repaying Cypress.  (Doc. 1-2, p. 60, ¶ 52).

### C.     Connection to the State of Alabama

Defendants, Olympus and Cypress, allegedly engaged in all of their communications with plaintiff, Breland, who was acting as the representative of the remaining plaintiffs, while Breland was physically located in Alabama.  (Doc. 1-2, p. 52, ¶ 18).

Defendants, Olympus, Cypress, Christensen, and Baxter, knew that the plaintiffs would execute all of the loan documents other than the Deeds of Trust in the State of Alabama.  (Doc. 1-2, pp. 55-56, ¶ 33).

## II.   PERSONAL JURISDICTION

Rule 12 of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of personal jurisdiction by motion.  FED. R. CIV. P. 12(b)(2).  "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.  A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings."  Republic of Pan. v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997).

The plaintiff "has the burden of establishing a prima facie case of personal jurisdiction."

Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006).  The plaintiff meets his burden of setting up a prima facie case if it "presents enough evidence to withstand a motion for directed verdict."  Id. (internal quotation omitted).  When a "defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction."  Id. When a plaintiff's "complaint and supporting affidavits and documents conflict with the Defendants' affidavits," the court "must construe all reasonable inferences in favor of the plaintiff."  Id.

Another court in this judicial district recently explained the legal standard for a personal jurisdiction defense in a case similar to this one.

> "When a defendant challenges personal jurisdiction, the plaintiff has the twin burdens of establishing that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment.  Accordingly, the critical question here is whether the exercise of personal jurisdiction over [the movants] conforms to constitutional safeguards.

> Due process authorizes the exercise of personal jurisdiction when "(1) the nonresident defendant has purposefully established minimum contacts with the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice."

> The minimum contacts analysis varies depending on whether the type of jurisdiction asserted is general or specific.  Indeed, facts supporting "[p]ersonal jurisdiction may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim."  Under general jurisdiction, there must be a showing of "continuous and systematic" contacts between the defendant and the forum state even if those contacts are unrelated to the plaintiff's claims.  By contrast, specific jurisdiction is proper where (i) the defendant's contacts with the forum state are related or give rise to the plaintiff's

cause of action, (ii) the contacts involve some act by which the defendant
purposefully avails itself of the privilege of conducting activities within the
forum, and (iii) the defendant's contacts with the forum are such that the
defendant should reasonably anticipate being haled into court there.

Matthews v. Brookstone Stores, Inc., 469 F. Supp. 2d 1056, 1059-61 (S.D. Ala. 2007) (citations

omitted).  See also Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007) (outlining

specific personal jurisdiction law as applied in Alabama).

      Another federal district court in this state explained the second requirement for specific

jurisdiction as follows:

"This 'purposeful availment' requirement ensures that a defendant will not be
haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'
contacts, or of the 'unilateral activity of another party or a third person[.]'" Thus,
"the defendant's [own] conduct and connection with the forum State [must be]
such that he should reasonably anticipate being haled into court there."

Mercantile Capital, LP v. Federal Transtel, Inc., 193 F. Supp. 2d 1243, 1248 (N.D. Ala. 2002)

(citations omitted).

      The "'fair warning' requirement is satisfied if the defendant has 'purposefully directed'

his activities at residents of the forum."  Republic of Pan., 119 F.3d at 945 (quoting Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  See also Calder v. Jones, 465 U.S. 783, 789-90

(1984) (If defendants located in one state aim tortious acts at a plaintiff located in another state,

the defendants should "reasonably anticipate being haled into court" in the plaintiff's state; an

individual injured in one state need not go to the defendants' state "to seek redress from persons

who, though remaining in [the defendants' state], knowingly cause the injury in" the plaintiff's

state.); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) ("And with respect to

interstate contractual obligations, we have emphasized that parties who 'reach out beyond one

state and create continuing relationships and obligations with citizens of another state' are

subject to regulation and sanctions in the other State for the consequences of their activities.");

Id. at 479 (Regarding contracts, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," should be considered in the minimum contacts inquiry.); Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1357 (11th Cir. 2000) (finding minimum contacts based on procurement of a single insurance policy due to defendant's actions directed at Alabama).

A defendant need not physically enter a state in order to establish minimum contacts there. Burger King, 471 U.S. at 476.

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Id.

"Once it has been established that a defendant has purposefully directed his activities at a particular forum, courts still should determine if the assertion of personal jurisdiction would comport with fair play and substantial justice." Republic of Pan., 119 F.3d at 945 (quotations omitted). If there are minimum contacts, a defendant seeking to avoid personal jurisdiction bears the burden "to show that the imposition of jurisdiction in the forum is unreasonable." Ruiz de Molina, 207 F.3d at 1358.

> Thus courts in "appropriate [cases]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a

compelling case that the presence of some other considerations would render jurisdiction unreasonable.

Burger King, 471 U.S. at 476-77 (citations omitted, alteration in original).

### A.      General Personal Jurisdiction

None of the defendants have connections with the State of Alabama to support the conclusion that this court may exercise general personal jurisdiction over them.

The individual defendants, Baxter, Hale, Walker, and Christensen, are citizens of Utah, have never been citizens of Alabama, never owned real or personal property in Alabama, have never before been involved in litigation in Alabama, have not availed themselves of Alabama courts, lack an Alabama telephone listing and an agent for service of process in Alabama, have no office in Alabama, and have never been to this state.  (Doc. 9-3, p. 3; Doc. 9-4, pp. 2-3; Doc. 9-5, pp. 2-3; Doc. 9-6, pp. 2-3).

According to Baxter, the manager of Cypress and the managing director of Olympus, the two LLC defendants, neither Cypress nor Olympus is an Alabama citizen, has done any business or taken any other action in Alabama, has an office or branch in Alabama, has an Alabama telephone listing, has an Alabama bank account, has real or personal property in Alabama, has been involved in any prior litigation in Alabama, or has previously availed itself of the Alabama courts.  (Doc. 9-3, pp. 3-4).

The record contains nothing contrary to the foregoing factual averments, and nothing else to justify the conclusion that any defendant has "continuous and systematic" contacts with the State of Alabama.  As such, this court will not exercise general personal jurisdiction over the defendants.

### B.      Specific Personal Jurisdiction

The defendants argue that the court does not have personal jurisdiction over Hale and

9

Walker because there are no allegations that Hale or Walker engaged in any of the specific conduct at issue in this case.  (Doc. 8, p. 9 n.4).  The extent of the allegations against Hale and Walker are contained in paragraphs 8, 10, 13, 14, and 54 of the complaint.  Paragraphs 8 and 10 allege that Hale and Walker are Utah residents.  (Doc. 1-2, p. 50, ¶¶ 8 and 10).  Paragraph 13 alleges that Hale and Walker allow themselves to be held out as "partners" in Olympus.  (Doc. 1-2, p. 51, ¶ 13).  Paragraph 14 identifies Hale and Walker as individuals who conspired with the fictitiously-named defendants.  (Doc. 1-2, p. 41, ¶ 14).  Paragraph 54 does not allege any facts, but rather asserts the legal conclusion that Hale and Walker are liable for the acts of Olympus because they allowed Olympus to hold them out as "partners."  (Doc. 1-2, p. 61, ¶ 54).  Other than allowing Olympus to hold them out as its "partners," the complaint does not allege that Hale and Walker did anything at all, much less anything that provides a basis for this court to exercise personal jurisdiction over these two citizens of the State of Utah.  **Hale and Walker** are **DISMISSED** pursuant to Rule 12(b)(2).

Considering the remaining defendants, it appears that all of the communications that gave rise to this case were directed at an individual who was physically present in the state of Alabama.  This allegation is supported by the fact that Utah Reverse, Water Canyon, Range Creek, and Patmos all share one common address in Daphne, Alabama.  (E.g., Doc. 9-7; Doc. 9-16, p. 2).  Given that this case is rooted in what the defendants told the plaintiffs orally and in writing, and in the transmissions of a loan term sheet and the subsequent loan documents from the defendants to the plaintiffs, this case arose out of alleged misdeeds that the defendants directed at the state of Alabama.  The motion to dismiss the remaining defendants for lack of personal jurisdiction is **DENIED**.

III.    VENUE

The defendants move in the alternative to transfer this case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1404(a), which says that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

> Because federal courts normally afford deference to a plaintiff's choice of forum on a motion under § 1404, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). A court, however, has "broad discretion in weighing the conflicting arguments as to venue," England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988); it must engage in an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988). A court may properly transfer a case to "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be [easiest, and] most expeditious and inexpensive.'" Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. July 13, 1981) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L. Ed. 1055 (1947)), cert. denied, 456 U.S. 918, 102 S. Ct. 1775, 72 L. Ed. 2d 178 (1982).

C.M.B. Foods, Inc. v. Corral of Middle, 396 F. Supp. 2d 1283, 1285-86 (M.D. Ala. 2005).

As is readily apparent from the statute, the motion turns on a two-step inquiry. First, the court has to decide whether this case could originally have been brought in the United States District Court for the District of Utah. Id. at 1286; § 1404(a). Second, the court has to decide whether the convenience of the parties and witnesses, and the interest of justice, would be served by transferring this case to Utah. C.M.B. Foods, 396 F. Supp. 2d at 1286; § 1404(a).

The plaintiffs could have sued in District Court in Utah. The parties are diverse and the amount in controversy exceeds $75,000, so, like this court, the Utah court would have subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[1] Venue would be proper in Utah under 28

---

[1]The court notes that the defendants, all of which are citizens of Utah, could not have removed this case to federal court in Utah if the plaintiffs originally filed in state court in Utah rather than in state court in Alabama. 28 U.S.C. § 1441(b) (Unless there is federal question jurisdiction, an action is "removable only if none of the parties in interest properly joined and

U.S.C. § 1391(a)(1) because all of the defendants reside in the state of Utah.

> The court must next consider whether the balance of justice and convenience favors transfer. When making this determination, courts generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency.

C.M.B. Foods, 396 F. Supp. 2d at 1286-87 (quotations and citations omitted).

The plaintiff's initial choice of forum is the Southern District of Alabama. "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). This is particularly true "if the forum is in the district in which [the plaintiff] resides." LaSalle Bank N.A. v. Mobile Hotel Props., LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003). The plaintiffs' office appears to be located in Daphne, Alabama, which is in this judicial district, but most or all of the plaintiffs, including the only individual, human, plaintiff, are citizens of Florida. This factor tips, as it usually or always does, in favor of the plaintiffs. Due to the fact that most or all of the plaintiffs are citizens of Florida, however, the court finds that this factor is not entitled to as much weight as it would be if the plaintiffs were Alabama citizens.

Considering the convenience of the parties, the business entities that are parties to this suit are controlled by the individuals who are named in this suit, so the court finds that this factor should be evaluated in terms of where the individuals who control the business entities would find it more convenient to litigate. The court notes that only one individual, the named plaintiff,

---

served as defendants is a citizen of the State in which such action is brought."). No party asserts that this statute has any bearing on the defendants' current efforts to transfer the case from this federal court to federal court in Utah, so the court does not undertake an analysis of the issue. See P & S Business Machs., Inc. v. Canon USA, Inc., 331 F.3d 804 (11th Cir. 2003) (ordering a transfer of venue in a case that was removed from state court).

would find it more convenient to litigate the case in this court.  The two remaining individual defendants live in Utah.  This factor tips in favor of the defendants.

It would be more convenient for the witnesses to litigate this case in Utah.  The two individual defendants in this case live in Utah.  The two individual defendants who this court dismissed for lack of personal jurisdiction live in Utah.  All three nonparty witness that the defendants list in their motion, their transactional counsel Eric W. Pearson, plaintiff's counsel Chris Jones, and plaintiff Breland's counsel Mitchell Stinson, live in Utah.  (Docs. 9-8 and 9-12).  The plaintiffs show that they may call six additional nonparty witnesses: Larry Trice, William Donado, Liz Schermerhorn, David Hecht, Ben Rutkevitz, and Mausa Zalta.  (Doc. 14, pp. 11-12).  The plaintiffs generally indicate that their witnesses live in this district, in Lafayette, Louisiana, New York, New Jersey, and California.  Schermerhorn lives in California, Hecht and Rutkevitz live in New Jersey, and Zalta lives in New York.  Trice lives in Alabama and Donado lives in Louisiana.  Not counting party witnesses, the parties indicate that thee witnesses live in Utah, one witness lives in the Southern District of Alabama, one witness lives within a four hour drive of Mobile, Alabama, and four witnesses will have to travel a good distance to reach either Utah or Alabama.  This factor tips in favor of the defendants.

Considering the ease of access to sources of the proof and the location of the relevant documents, the complaint tends to show that the proof is in the testimony and the documents.  There is nothing to show that the documents involved in this case are anything other than readily-obtainable in both venues.  This factor does not weigh in any party's favor.

Regarding compulsory process for the witnesses, the defendants cite Rule 45 of the Federal Rules of Civil Procedure for their assertion that "it appears that the nonparty witnesses" in Utah are not subject to compulsory process.  (Doc. 8, p. 13 n.7).  That may be true, but all of

the nonparty witnesses that the defendants list in their motion are lawyers representing parties in this case. Presumably these nonparty witnesses will be willing to attend trial with or without compulsory process, so the court finds that this factor carries little weight in favor of any party.

The parties make no significant arguments regarding their relative financial abilities to bear the cost of travel. The court finds that this factor does not weigh in any party's favor.

The foregoing generally-applied factors weigh in favor of transferring this case from the Southern District of Alabama to the District of Utah.

In addition, the loan documents indicate that they are governed by the laws of Utah and that the plaintiffs agreed to venue in Utah. (Doc. 9-9, p. 11, ¶ 25; Doc. 9-10, p. 11, ¶ 25; Doc. 9-11, p. 11, ¶ 25; Doc. 9-13, p. 7, ¶ 5.8; Doc. 9-13, p. 16, ¶ 5.8; Doc. 9-13, p. 25, ¶ 5.8; Doc. 9-14, p. 9, ¶ 17; Doc. 9-15, p. 8, ¶ 5.8; Doc. 9-16, p. 5, ¶ 12). Such clauses are generally enforceable. P & S Business Machs., 331 F.3d at 807-808. Of course, the forum selection clause is included in the loan documents that the plaintiffs challenge in their complaint, but there are no allegations, or other reasons to believe at this stage of the litigation, that the plaintiff did not agree to the Utah forum selection clauses.

The extent of the plaintiffs' response to the argument that this court should apply the forum selection clauses is that the clauses are permissive rather than mandatory. There are five basic forum selection clauses at issue in this motion.

The forum selection clause in the deeds of trust reads:

Venue of any dispute involving this Trust Deed or any provision or interpretation thereof, or involving any matter arising out of or connected in any way with this Trust Deed, and jurisdiction over the parties hereto, may be in any court of competent jurisdiction in the State of Utah. Trustor hereby irrevocably consents and submits to the jurisdiction and venue of said courts, hereby waiving any rights it may now or hereafter have to object to, or seek a change of, such jurisdiction and venue.

(Doc. 9-9, p. 11, ¶ 25; Doc. 9-10, p. 11, ¶ 25; Doc. 9-11, p. 11, ¶ 25).

The forum selection clause in the Affiliate Company Guarantees reads:

Guarantor hereby expressly submits itself to the exclusive, personal jurisdiction of the federal and state courts situated in the State of Utah, waives any objection that it may now or hereafter have to the venue of any action in any such court or that any such action was brought in an inconvenient forum, and agrees not to plead or claim the same.

(Doc. 9-13, p. 7, ¶ 5.8; Doc. 9-13, p. 16, ¶ 5.8; Doc. 9-13, p. 25, ¶ 5.8).

The forum selection clause in the indemnity agreement reads:

Indemnitor hereby expressly submits himself, herself and/or itself to the exclusive, personal jurisdiction of the federal and state courts situated in the State of Utah, waives any objection that he, she or it may now or hereafter have to the venue of any action in any such court or that any such action was brought in an inconvenient forum, and agrees not to plead or claim the same.

(Doc. 9-14, p. 9, ¶ 17).

The forum selection clause in the personal guarantee reads:

Guarantor hereby expressly submits himself or herself to the exclusive, personal jurisdiction of the federal and state courts situated in the State of Utah, waives any objection that he or she may now or hereafter have to the venue of any action in any such court or that any such action was brought in an inconvenient forum, and agrees not to plead or claim the same.

(Doc. 9-15, p. 8, ¶ 5.8).

The forum selection clause in the secured promissory note reads:

Venue of any dispute involving this Note or any provision or interpretation thereof, or involving any matter arising out of or connected in any way with this Note, and jurisdiction over the parties hereto, may be in any court of competent jurisdiction in the State of Utah.  Borrower hereby irrevocably consents and submits to the jurisdiction and venue of said courts, hereby waiving any rights it may now or hereafter have to object to, or seek a change of, such jurisdiction and venue.

(Doc. 9-16, p. 5, ¶ 12).

Although the plaintiffs correctly point out that none of the foregoing selection clauses

specifically say that Utah is the state of exclusive venue, see P & S Business Machs., 331 F.3d at 806-07 (forum selection clause indicated, in all capital letters, that lawsuits "shall be brought exclusively . . . within the state of California."), the forum selection clauses before this court all indicate that the parties consent to suit in Utah and that the various plaintiffs waive the ability to object to venue in Utah.  In contrast, the forum selection clauses in the cases the plaintiffs cite in support of their argument that the clauses in this case are permissive, provide that litigation "may" go forward in a given state, but there is no indication that they include a provision requiring a party to waive any objections to litigation in the specified state.

The plaintiffs primarily rely on Blanco v. Banco Indus. De Venezuela, S.A., 997 F.2d 974 (2d Cir. 1993).  The forum selection clause at issue in that case was permissive in the sense that it provided suit "may be brought" in a particular forum.  Id. at 979.[2]  Rejecting an argument that the clause was mandatory, the court specifically distinguished the forum selection clause before it from the forum selection clause in another case which identified "fora in which suit 'may' be brought," but also "added both the defendant's 'irrevocable consent[]' to suit in those designated fora at the plaintiff's election and the defendant's waiver of forum non conveniens objections."  Id. (citation omitted, alteration in original).  The forum selection clauses in this case also include waivers of objections to venue in Utah.  Particularly in light of the standard factors courts consider in a change of venue analysis, the Blanco case is of little help to the plaintiffs.  The parties clearly contemplated litigating in Utah and the plaintiffs agreed not to object to venue there.

For the foregoing reasons, the court **GRANTS** the motion to transfer this case to the United States District Court for the District of Utah.

---

[2]The forum selection clause also provided that the parties irrevocably submitted to the jurisdiction of the courts in which suit "may be brought."  Id. at 976.

**IV.    CONCLUSION**

For the foregoing reasons, the court **GRANTS** the motion to dismiss Hale and Walker and **DENIES** the motion to dismiss the remaining defendants.  The court **GRANTS** the motion for a change of venue to the United States District Court for the District of Utah.

**DONE and ORDERED** this 25th day of March, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

17